IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
~~SOUTHERN~~ DIVISION
Eastern

| | |
|---|---|
| UMA VISWANATHAN ) | |
| ) | |
| Plaintiff, ) | CASE No. 4:02-CV-8-H3 |
| vs. ) | |
| ) | |
| EAST CAROLINA UNIVERSITY ) | COMPLAINT |
| BOARD OF TRUSTEES ) | |
| ) | |
| Defendant ) | |
| ) | |

FILED
JAN 14 2002
DAVID W. DANIEL, CLERK
U.S. DISTRICT COURT
E. DIST. NO. CAR.

## COMPLAINT

(JURY TRIAL REQUESTED)

### I. INTRODUCTION

1. Plaintiff Uma Viswanathan brings this action, pursuant to 42 U.S.C, Sections 1983 and 1981 for discrimination against her on the basis of her race, national origin, and alien status. Plaintiff seeks declaratory and injunctive relief and redress from a deprivation of plaintiff's statutory rights and privileges under color of state law, custom, regulation, ordinance or usage.

2. Plaintiff also brings this action under North Carolina State Law against the Defendant East Carolina University Board of Trustees for breach of contract, negligence, and defamation and libel.

### II. JURISDICTION AND VENUE

3) The Court has jurisdiction over this action pursuant to 28 U.S.C., Section 1331, and 1343(a)(3) and (4).

4) The Court's jurisdiction for punitive and compensatory damages is explicitly authorized by 42 U.S.C., Sections 1981(b), and (a), and 28 U.S.C., Sections 1331, and 1343(a)(3) and (4).

5) All of Plaintiff's causes including those under breach of contract and breach of Public Trust are also brought, pursuant to N.C.G.S. § 1-52(1), 1-52(2), § 1-56.

6) Plaintiff also seeks the costs and expenses of this action, together with reasonable attorney fees, pursuant to 42 U.S.C., Section 1988.

7) Plaintiff's action for declaratory relief is authorized by 28 U.S.C., Sections 2201 and 2202, and also by N.C.G.S. § 1-253 through § 1-256.

8) The Court's jurisdiction over this action is also authorized by 28 U.S.C., Section 1332.

9) The Federal Court has independent jurisdiction in all matters, due to the plaintiff being an alien.

10) The matter in controversy exceeds, exclusive of interests and costs, the sum of $100,000 (one hundred thousand dollars).

11) Venue is proper under 28 U.S.C., Section 1391.

### III. PARTIES

12) Plaintiff is an alien. She was a resident of Greenville, Pitt County, North Carolina at the time relevant to the Complaint. She resided in Greenville from 1990 through 1999.

13) Plaintiff is an alien, a citizen of India. She is Asian.

14) East Carolina University (ECU hereafter) is located in Greenville, Pitt County. It is a public university, and a constituent institution of the University of North Carolina System, which is a body politic and corporate, established under N.C.G.S. § 116-3 to fulfill the higher educational needs of the State. The Defendant Board of Trustees (Board)

is responsible for the proper administration and operation of this public university. It has local control of the system. The Board appoints teaching and other staff.

## IV. FACTS

15) During the summer of 1998, Uma Viswanathan applied for a teaching position in the Department of Chemistry at East Carolina University, Greenville, North Carolina. She was interviewed and she was told during the interview that there was no position available in the Fall of 1998, but that she could again inquire for the Spring Semester.

16) She was interviewed again in November, 1998 and was offered a position as instructor in the Department of Chemistry for the Spring Semester beginning in January, 1999.

17) Uma Viswanathan accepted the faculty position that was offered.

18) The faculty position, which Uma Viswanathan accepted, was a fixed-term appointment for the Spring Semester of the academic year 1998-99.

19) The written contract was not ready at the time she accepted the offer and again when she started teaching classes on January 11, 1999. Dr. Li, Chairman of the ECU Chemistry Department had told Uma Viswanathan: "Uma, you have to take my word for it".

20) Uma Viswanathan had an oral contract. She started teaching classes on January 11, 1999. She was teaching five classes in chemistry.

21) Uma Viswanathan's duties consisted of the following:

    (i)     Instructor for two (2) sections of the lab course CHEM 1151: General Chemistry Lab 1.

    (ii)    Instructor for 2(two) sections of the lab course CHEM 1161: General Chemistry Lab 2.

    (iii)   Instructor for CHEM 1020, General Descriptive Chemistry.

22) In all Uma Viswanathan was teaching five classes including labs. All the five classes were freshmen courses.

23) Uma Viswanathan was also assigned an Office Room No. 235B in the premises housing the Chemistry Department on or about January 4, 1999, a week prior to the period classes started. She was also authorized to get a parking decal as a faculty member for on-campus parking.

24) Classes started on January 11, 1999, and Uma Viswanathan gave all five of her classes.

25) Uma Viswanathan had a <u>de facto</u> contract, as she taught classes.

26) On January 14, 1999, the fourth day after classes started, Dr. Li, Chairman of the Chemistry Department called Uma Viswanathan and told her that he had just received a call from Ms. Rhonda Brown, Director of the ECU International Program. Ms. Brown had told him that the University would not employ her unless she produced an employment authorization from the Immigration and Naturalization Service (INS).

27) Uma Viswanathan is an alien and a Citizen of India, carrying an Indian Passport.

28) Plaintiff Uma Viswanathan entered the United States on a H-1B Visa issued by the United States Consulate in Madras, India in the summer of 1997, and she was legally admitted to the United States under the applicable laws.

29) Uma Viswanathan was at the time of her entry classified under visa classification H-1B, as codified in Title 8, U.S.C., Section 1101(a)(15)(H).

30) At the time, Uma Viswanthan was offered the teaching position at ECU, her H-1 status had expired. A Petition to extend her status was in process.

31) Uma Viswanathan had, prior to her accepting the job offer from ECU, complied with the filling out of Form I-9 that is regulated in 8 CFR, Section 274a.2(b). She also produced

her driver's license issued by the North Carolina Department of transport and her Social Security Card, which carries no restrictions. The acceptability of these documents for the purpose of establishing identity and employment authorization are set forth in Section 274a.2(b)(1)(v)(B) (1)(ι) and Section 274a.2(b)(1)(v)(C)(1) respectively of 8 CFR.

32) Form I-9 is a form that is required for employment eligibility.

33) The regulations for the filling out of form I-9 are set forth in 8 CFR, Section 274a.

34) Of the two documents submitted by Uma Viswanathan, the driver's license established identity and the social security card without any restrictions established employment authorization for the purpose of verification of employment eligibility. (Section 274a.2(b)(1)(v)(B) (1)(ι) and Section 274a.2(b)(1)(v)(C)(1) of 8 CFR.).

35) Uma Viswanathan had complied with the law and the terms of her contract fully and faithfully.

36) Dr. Li told Uma Viswanathan that she could not teach her classes starting Tuesday, January 19, 1999. He told Uma that on Friday, January 15, 1999, she would teach the only class she had in CHEM 1020. This conversation between Dr. Li and Uma Viswanathan took place during the morning of Thursday, January 14, 1999.

37) However, at the end of the day on Thursday, January 14, 1999, Dr. Li came to Uma Viswanathan and told her that a Ms. Brown had asked him to tell her that she was no longer employed by the University and that she could not teach on Friday, January 15, 1999. Ms. Brown was in charge of the international program at ECU.

38) Dr. Li asked Uma Viswanathan to return to him the textbooks for the courses. Uma Viswanathan, had at that time just returned to her office, having finished her last class of the day, which was a lab class from 2:00 p.m. to 5:00 p.m.

39) Uma Viswanathan had reasonable expectations of continuing in her employment. In fact, Dr. Li had told her that, if she would be available during the summer of 1999, he would like to hire her for teaching summer courses.

40) Plaintiff Uma Viswanathan requested Attorney Ben Irons, Attorney for ECU to wait for the employment authorization. Since he refused, Plaintiff asked him to sponsor her for a H-1 visa for her employment with ECU. ECU had been sponsoring other teachers who did not have this authorization at the time they were employed.

41) The routine procedure for a University like ECU is to file a H-1B Petition with the Immigration and Naturalization Service (INS hereafter). A qualified person would start teaching, as long as the University has the intent to employ the person. INS process though routine does consume time. Generally, a university cannot wait for the approval from INS to come for the instructor to start teaching.

42) ECU has been routinely engaging in the on-going H-1B petition process described in the foregoing. It had the routine practice of allowing qualified aliens to start their employment without a *de jure* employment authorization. Plaintiff alleges that the Form I-9 that these persons filled in was no different from the one that she filled in. Yet the University demanded more proof from her than from others.

43) Attorney Irons and ECU refused to undertake the petition process. ECU discriminated on the basis of Plaintiff's race, her nationality, and her alien status. ECU used the issue of employment authorization as a pretext to terminate Plaintiff's employment. As stated in the foregoing, ECU routinely files the delayed H-1B Petition in the case of Europeans and persons whose national origin is not that of India. These persons whom ECU sponsors for

the H-1B process are whites. They start teaching and the employment authorization comes in due course.

44) Such persons continue to be employed by ECU, teach during the semester sessions, and get paid for their services, even though these persons lack the very same INS paper that was demanded of Plaintiff Uma Viswanathan.

45) Uma Viswanathan had a *de fact* contract as evidenced by her teaching classes. She had a statutory right to continue in her employment. She was deprived of her rights and privileges under color of state law, custom, regulation, ordinance or usage. The university constructed immigration laws according to its own wrongful perceptions. It then used its construction to breach the contract.

46) Plaintiff alleges that ECU indulges in these practices as a routine, --- a custom.

47) Plaintiff was also not given any written notice of termination of her appointment. She had a right for such a notice, and to pursue due process. Her contract was terminated without due process. Her contractual rights were property rights.

48) Uma Viswanathan was publicly humiliated and defamed, as she was removed from her teaching duties publicly. Uma Viswanathan was very distressed. On Dr. Li's word, Uma Viswanathan had given up her previous job. She also moved to Greenville from Beaufort county during the first week of January, 1999 and had signed a new lease for an apartment.

49) She also had to make a deposit for utility services in Greenville.

50) Uma Viswanathan had reasonable expectation of continuing employment at ECU. She had to sign a lease for one year. Despite her best efforts, she was unable to find an apartment on a six-month lease.

51) She had to give notice to her previous landlord and because she did not have the time to give a timely notice of vacating the apartment, she had to pay an extra month's rent for her previous apartment.

52) She also had moving expenses.

## V. CLAIMS

### COUNT 1 (EQUAL PROTECTION)

53) Paragraphs 1 through 52 are hereby realleged and incorporated by reference, as though fully set forth herein.

54) The Defendant ECU used the provision of a *de facto* employment-authorization by the INS as a pretext to terminate her employment. Plaintiff alleges that these provisions were not applied by ECU in a number of similar cases. The invidious application of this provision in her case was practiced under color of state law, custom, regulation, ordinance or usage.

55) The Defendant deprived the plaintiff of equal protection under 42 U.S.C., Section 1981 by discriminating against her on the basis of her race (Asian), national origin, and/or alien status.

56) The deprivation of the benefits guaranteed under 42 U.S.C., Section 1981 as stated herein establishes a cause of action, pursuant to 42 U.S.C., Section 1983, and N.C.G.S. § 1-52 (2). The Defendant acted under color of state law, custom, statute, ordinance, regulation or usage.

### COUNT 2 (INTENTIONAL DISCRIMINATION)

57) Paragraphs 1 through 52 are hereby realleged and incorporated by reference, as though fully set forth herein.

58) The Defendant ECU used the provision of a *de facto* employment-authorization by the INS as a pretext to terminate her employment. Plaintiff alleges that these provisions were not applied by ECU in a number of similar cases. The invidious application of this provision in her case was practiced under color of state law, custom, regulation, ordinance or usage.

59) Defendant used the provisions of *de facto* employment authorization in such a way as to give it a controlling force that establishes intentional discrimination on the basis of Plaintiff's race, national origin and alien status.

60) Defendant's acts of intentional discrimination on the basis of Plaintiff's race, national origin, and/or her alien status gives rise to a cause of action, pursuant to 42 U.S.C., Section 1983 and N.C.G.S. § 1-52 (2). The Defendant acted under color of state law, custom, statute, ordinance, regulation or usage.

## COUNT 3 (DUE PROCESS)

61) Paragraphs 1 through 52 are hereby realleged and incorporated by reference, as though fully set forth herein.

62) Uma Viswanathan had due process rights under the ECU Policies and Regulations for faculty. She was given the proper notice of the termination of her appointment and the benefits of the rights available to her under the law.

63) ECU, acting under color of state custom, law, regulation, ordinance, and statute, deprived Uma Viswanathan of property without due process, a protection guaranteed by the Fourteenth Amendment to the United States Constitution.

64) The deprivation of this constitutional right establishes a cause of action, pursuant to 42 U.S.C., Section 1983, and N.C.G.S. § 1-52 (2). The Defendant acted under color of state law, custom, statute, ordinance, regulation or usage.

## COUNT 4 (BREACH OF CONTRACT ACTUAL AND CONSTRUCTIVE)

65) Paragraphs 1 through 52 are hereby realleged and incorporated by reference, as though fully set forth herein.

66) Uma Viswanathan had a *de facto* contract with ECU and ECU breached the contract.

67) Uma Viswanathan had complied with all the terms of her contract fully and faithfully.

68) The contract constituted a property. The right to enjoy the benefits accruing from the contract also constituted property.

69) The university constructed immigration laws according to its own wrongful perceptions. It then used its construction to breach the contract.

70) The obligation and liability arising out of the actual or constructive breach of the contract gives rise to a cause of action, pursuant to N.C.G.S. § 1-52(1).

## COUNT 5 (MISTAKE / DEFAMATION/ EMOTIONL DISTRESS)

71) Paragraphs 1 through 52 are hereby realleged and incorporated by reference, as though fully set forth herein.

72) On Friday, January 15, 1999, T.M. Viswanathan, Uma Viswanathan's husband and Uma Viswanathan met Ms. Rhonda Brown. They both presented to Ms. Brown the application made by Uma Viswanathan to the INS for employment authorization, along with all attachments to the application. They also produced a notice from INS giving a receipt number showing processing of the application.

10
Case 4:02-cv-00008-H   Document 1   Filed 01/14/02   Page 10 of 17

73) The fee for the processing of the application had gone up on October 31, 1998. Uma Viswanathan was not aware of the increase in the fee, and had submitted the wrong amount of fee, when she submitted her application in November, 1998.

74) Ms. Brown demanded "[a]n unexpired employment authorization document issued by the Immigration and Naturalization Service".

75) During her conversation with Uma Viswanathan and Dr. T.M. Viswanathan, Ms. Brown referred to Uma Viswanathan as being "illegal alien". She referred to Uma Viswanathan twice as being an "illegal alien". Uma Viswanathan's husband Dr. T.M. Viswanathan pointed to Ms. Brown that the phrase "illegal aliens" was a technical term under the law and refers to one who entered the country without the proper visa documentation, and that Uma has several visas in her passport issued by an appropriate consular agency of the United States. Uma Viswanathan had entered the country legally.

76) When Dr. Viswanathan, Uma's husband pointed this out to Ms. Brown, Ms. Brown conceded that she was wrong; nevertheless, she referred to Uma Viswanathan as being An "illegal alien" a second time during the conversation.

77) Ms. Brown asked for the Passport and Form I-94 of Uma Viswanathan. Ms. Brown said that the Form I-94 is the only proof of employment authorization and demanded that Uma Viswanathan produce the same. Ms. Brown's referring to Uma Viswanathan as an "illegal alien", her unlawful demand in excess of her authority that Uma Viswanathan produce Form I-94 and the Passport evoked fear, anxiety, and emotional distress into the heart of Uma Viswanathan.

78) The foregoing mistake, acts of defamation, and the personal injury caused thereby give rise to a cause of action, pursuant to N.C.G.S. § 1-52(9, 16).

## COUNT 6 (INTENTIONAL DISCRIMINATION)

79) Paragraphs 1 through 52 and 69 through 74 are hereby realleged and incorporated by reference, as though fully set forth herein.

80) Altogether the regulations provide any one of eighty (80) possible documents or combinations thereof for verification of employment eligibility as follows: Eight (8) documents under Section 274a.2(b)(v)(A) and seventy-two (72 = 9 x 8) combinations of documents choosing one of nine (9) documents from Section 274a.2(b)(v)(B)(1) and one of eight (8) documents set forth in Section 274a.2(b)(v)(C). Of these eighty combinations, Ms. Rhonda Brown demanded that Uma Viswanathan produce one particular document from Section 274a.2(b)(v)(A)(4)(2).

81) Ms. Rhonda Brown's demand was both arbitrary and in excess of her authority. ECU endorsed her exercise of her authority in excess of the law, even when Plaintiff complained about it.

82) In as much as the document demanded could only be produced by an alien, the demand constitutes discrimination based on her alien status and deprived Uma Viswanathan of the right to contract and the right to enjoy the benefits thereof. Such a demand, should it be made by a consular officer of the United States, would be legal and consistent with the laws of the United States. Uma Viswanathan was in U.S. territory and was subject to the jurisdiction of the United States. She had an equal right to contract and enjoy the benefits thereof, pursuant to Title 42, U.S.C., Section 1981.

83) Ms. Rhonda Brown acted under color of state custom, law, statute, regulation, or ordinance.

84) For purposes of employment eligibility, the regulations create eighty (80) classes of documents and accord them all equal status. Ms. Brown refused to accept that all the eighty (80) classes are equal under the law and demanded, based on the alien status of Uma Viswanathan, that she produce a particular document from a single class. ECU accepted this illegal demand of Ms. Brown, and deprived Uma Viswanathan of equal protection guaranteed by the Fourteenth Amendment. This she did under color of state custom, policy, regulation, law, statute, ordinance and the like.

85) The deprivation of a constitutional right gives rise to a cause of action, pursuant to 42 U.S.C., § 1983, and N.C.G.S. § 1-52 (2).

## COUNT 7 (EQUAL PROTECTION)

86) Paragraphs 1 through 52 and 69 through 74 are hereby realleged and incorporated by reference, as though fully set forth herein.

87) Uma Viswanathan requested ECU to petition the INS to extend her H-1B status. The H-1B petition in Form I-129 has to be made by an employer. The H-1B status authorizes employment in specialty areas like chemistry. INS accords university instructors special treatment.

88) Ms. Brown turned down the request of Uma Viswanathan.

89) Uma Viswanathan was contracted. Pursuant to 42 U.S.C., Section 1981, she had equal rights under the law to enjoy the benefits of her contract. As part of those benefits, ECU routinely files petitions for employment authorization for its faculty, who are aliens. However, under the color of state custom, law, policy, statute, regulation, and ordinance, ECU creates two classes of alien faculty, who can be accorded employment authorization based on a H-1 petition petitioned by ECU. ECU chooses to affirmatively make the

13
Case 4:02-cv-00008-H   Document 1   Filed 01/14/02   Page 13 of 17

petition for some faculty members, while refusing to make a similar the petition for some other faculty members. This division of the two classes is not one that is made by the INS, but is an arbitrary division made by ECU on its own, in violation of the equal protection of the laws, guaranteed by the Fourteenth Amendment.

90) The deprivation of this constitutional right establishes a cause of action, pursuant to 42 U.S.C., Section 1983, and N.C.G.S. § 1-52 (2). The Defendant acted under color of state law, custom, statute, ordinance, regulation or usage.

## COUNT 8 (DUE PROCESS/ ARBITRARY DECISION)

91) Paragraphs 1 through 52 and 69 through 74 are hereby realleged and incorporated by reference, as though fully set forth herein.

92) North Carolina's Administrative Procedure Act does not support arbitrary actions like the ones enunciated herein on the part of administrators. The right for notice and the opportunity to go through the procedures in the Administrative Procedures Act constitute property. Uma Viswanathan was deprived of this property without due process under color of State law, custom, regulation, ordinance, and statute. Uma Viswanathan was deprived of a protection guaranteed by the Fourteenth Amendment to the United States Constitution.

93) The deprivation of this constitutional right establishes a cause of action, pursuant to 42 U.S.C., § 1983, and N.C.G.S. § 1-52(2). The Defendant acted under color of state law, custom, statute, ordinance, regulation or usage.

## COUNT 9 (DUE PROCESS/EXCESS OF AUTHORITY)

94) Paragraphs 1 through 52 and 69 through 74 are hereby realleged and incorporated by reference, as though fully set forth herein.

95) North Carolina's Administrative Procedure Act does not permit an administrator to act in excess of his or her authority. Viswanathan contended that she be given an opportunity to take the case further up. Such a right constituted part of the due process procedures under the N.C. Administrative Procedure Act.

96) The right for notice and the opportunity to go through the procedures in the Administrative Procedures Act constitute property. Uma Viswanathan was deprived of this property without due process under color of State law, custom, regulation, ordinance, and statute.

97) Uma Viswanathan was deprived of a protection guaranteed by the Fourteenth Amendment to the United States Constitution.

98) The deprivation of this constitutional right establishes a cause of action, pursuant to 42 U.S.C., § 1983, and N.C.G.S. § 1-52(2). The Defendant acted under color of state law, custom, statute, ordinance, regulation or usage.

## COUNT 10 (NEGLECT/ DEFAMATION/ BREACH OF PUBLIC TRUST)

99) Paragraphs 1 through 52 and 69 through 74 are hereby realleged and incorporated by reference, as though fully set forth herein.

100) A university is a very special place, being an institution of education. The public's perception of the university is one of an institution of higher education, where faculty members are treated with respect and fairness. This public image of the university is particularly true of an institution like ECU with a venerable history behind it. Dr. Li would have normally followed due process procedures before telling Uma Viswanathan that he was no longer employed by the University. It appears that Ms. Brown put him under duress. An official, who is not a faculty member, put faculty members and faculty

administrators under duress causing them to deprive the rights of other faculty. By vesting Rhonda Brown of authority that is excessive, ECU has breached public trust in violation of state law. The very phrase "Board of Trustees" is evocative of public trust.

101) ECU by its thoughtless and negligent acts defamed Uma Viswanathan, and caused her emotional distress, and anxiety.

102) These violations and the neglect on the part of the ECU administration give rise to a cause of action, pursuant to N.C.G.S. § 1-52 (2, 16)).

103) Plaintiff also seeks declaratory judgment pursuant to § 1-52 (2), and 1-253 through 256.

## COUNT 11 (NEGLECT/DEFAMATION/ PUBLIC TRUST)

104) Paragraphs 1 through 52 and 69 through 74 are hereby realleged and incorporated by reference, as though fully set forth herein.

105) The manner in which Uma Viswanathan was removed from her teaching duties betrays lack of respect for a faculty member. ECU publicly humiliated her, when it removed her from classes. The university neglected to treat the plaintiff fairly. This picture of what happened to Uma Viswanathan does not tally with the public's perception of the university. The public's perception of ECU is one of an institution of higher education with a venerable history, setting standards of conduct. The humiliation caused to Uma Viswanathan is a breach of public trust in violation of state law.

106) The humiliation, and defamation caused as a result of this negligence give rise to a cause of action, pursuant to N.C.G.S. § 1-52 (2). Plaintiff also seeks declaratory judgment pursuant to N.C.G.S. § 1-52 (2), and § 1-253 through 256.

## VI. JURY TRIAL

107) Plaintiff requests a jury trial with respect to all issues and claims.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court:

108) . Declare that Defendant's actions complained of herein violated 42 U.S.C., Sections 1981, and 1983, and the constitutional provisions herein.

109) Declare that the Defendant ECU breached plaintiff's contract constructively, acted negligently, and defamed her, causing her injury.

110) Award Plaintiff her lost wages.

111) Award Plaintiff compensatory, exemplary, and punitive damages in an amount in excess of $ 100,000.00.

112) Award plaintiff her costs. cGrant plaintiff such other further relief as may be just and proper including injunctive orders.

Respectfully submitted this the 2nd day of January, 2002.

*Uma Viswanathan*
Uma Viswanathan
C/o Ms. Vijaya Rajagopalan
88 Fiesta Circle
St. Luis MO 63146
St. Louis